## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA SOLIS, an individual, on behalf of herself and all others similarly situated, **)** **)** **)** **)** | Case No. **'24CV0251 DMS DEB** |
| Plaintiffs, **)** **)** | |
| vs. **)** **)** | **CLASS ACTION COMPLAINT** |
| TOYOTA MOTOR SALES, U.S.A., INC., a California corporation; TOYOTA MOTOR CREDIT CORPORATION, a California corporation; and DOES 1 through 100, inclusive, **)** **)** **)** **)** **)** **)** **)** | **JURY TRIAL DEMANDED** |
| Defendants. **)** **)** **)** | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff TERESA SOLIS ("Plaintiff"), by and through her undersigned counsel, on her own behalf and on behalf of all other persons similarly situated, sue TOYOTA MOTOR SALES, U.S.A., INC. ("Toyota Motor Sales"); TOYOTA MOTOR CREDIT CORPORATION ("Toyota Credit") (Toyota Motor Sales and Toyota Credit are collectively referred to herein as "Toyota"); and Does 1 through 100 ("Doe Defendants") (Toyota and Doe Defendants are collectively referred to herein as the "Defendants") and for this Complaint, allege upon information and belief, and based on the investigation to date of their counsel, as follows:

## <u>INTRODUCTION</u>

1.      This is a class action brought for the benefit and protection of Plaintiff and all other similarly situated consumers against Toyota, which sold purchasers of Toyota vehicles prepaid ToyotaCare Plus maintenance plans for varying years and mileages ("Maintenance Plan").

2.      Toyota claims this Maintenance Plan is meant to cover scheduled services that are

ordinarily paid for by Toyota consumers at specific mileage intervals.  Thus, as an example, rather than pay for maintenance every 5,000 miles, consumers can pay upfront for a Maintenance Plan that is meant to cover all scheduled maintenance on their Toyota vehicles for five years and/or up to 55,000 miles.

3.       Toyota advertises, promotes, markets, and sells ToyotaCare Plus maintenance plans, including the Maintenance Plan, for their automobiles to consumers across the United States under the false premise that the Maintenance Plan is a superior value and lower-cost alternative to paying for each scheduled service individually at the time of service.

4.       Upon information and belief, the Maintenance Plan can cost upwards of $1,000.

5.       By making false, fraudulent, and misleading statements to consumers, Defendants made substantial profits and deceived thousands of consumers, including Plaintiff, who purchased the Maintenance Plan under the false belief that it was a good value and would save them money.

6.       Consumers have been misled, induced, and defrauded into spending money and thus harmed by Defendants' fraudulent misrepresentations and false advertising.

## JURISDICTION AND VENUE

7.       This Court has original jurisdiction over this action under 28 U.S.C. section 1331 in that it presents a claim arising under federal law, specifically the enforcement of the Magnuson-Moss Consumer Products Liability Act, 15 U.S.C. section 2301, *et seq.* and the Lanham Act, 15 U.S.C. section 1125, *et seq*.  This Court also has jurisdiction over this action under 28 U.S.C. section 1332(d) of the Class Action Fairness Act because the aggregated claims of the class members exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one Class Member (defined below) is a citizen of a state different from Defendants.

8.       Venue is proper in this District pursuant to 28 U.S.C. section 1391(b) and (c) because: (i) the Toyota entities are citizens of California actively doing business in California and subject to personal jurisdiction throughout California; (ii) Defendants transact business in California and in the District based on their sales with residents of the District; (iii) upon information and belief Defendants have committed unlawful acts in the District by and through

2

their sales and/or finance practices with residents of this District; and (iv) a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

9.     At all relevant times, Plaintiff was and has been a citizen of the State of California and a resident of San Diego County.  Plaintiff was deceived by the fraudulent and misleading representations of Defendants, which were a material factor in her decision to purchase the Maintenance Plan from Defendants.

10.     Upon information and belief, Plaintiff alleges that Toyota Motor Sales is a California Corporation with a principal place of business in Plano, Texas.

11.     Upon information and belief, Plaintiff alleges that Toyota Credit is a California Corporation with a principal place of business in Plano, Texas.

12.     Upon information and belief, Toyota is comprised of affiliated corporate entities, each of which conducts business in the state of California. These entities, individually or collectively, through an integrated corporate structure (the details of which Plaintiff is presently unaware), markets, sells and provides automobiles and associated products and services, including without limitation the Maintenance Plan.

13.     The true names and/or capacities, whether individual, corporate, partnership, associate, governmental, or otherwise, of the Doe Defendants, inclusive, and each of them, are unknown to Plaintiff at this time, who therefore sues said Doe Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each defendant designated herein as a Doe Defendant caused injuries and damages proximately thereby to Plaintiff as hereafter alleged, and that each Doe Defendant is liable to Plaintiff for the acts and omissions alleged herein below, and the resulting injuries to Plaintiff, and damages sustained by Plaintiff.  Plaintiff will amend this Complaint to allege the true names and capacities of said Doe Defendants when the same are ascertained.

## FACTS COMMON TO ALL CLASS MEMBERS

14.     Upon information and belief, Plaintiff alleges that Toyota Motor Sales is one of the

largest automobile manufacturers in the world and sells its vehicles and associated services to consumers across the United States – including California.

15.     Upon information and belief, Plaintiff alleges that Toyota Credit is the United States-based auto-financing arm of Toyota Motor Sales and one of the largest indirect auto lenders in the country.

16.     Toyota advertises, promotes, markets, and sells the Maintenance Plan for their automobiles to consumers across the United States, including California, under the false premise that the Maintenance Plan is a lower-cost alternative to paying for each scheduled service individually at the time of service.

17.     Toyota Credit provides financing for vehicles and the Maintenance Plan sold with those vehicles.

18.     Upon information and belief, the Maintenance Plan can cost more than $1,000.  And if a consumer purchased the Maintenance Plan in a vehicle sale or lease, it would increase the loan amount, monthly payment, and finance charges that this consumer would pay.

19.     Plaintiff alleges that the Defendants exaggerated how much scheduled services ordinarily cost in order to artificially inflate the value of the Maintenance Plan and perceived cost-savings associated therewith.

20.     Toyota, and by extension all Defendants, profited from the sale of the Maintenance Plan by collecting more charges on the increased loan amount, monthly payment, and finance charges than they would have received had consumers opted instead to pay for scheduled services individually at the time of those services.

21.      At all relevant times, Plaintiff alleges that Defendants devised a scheme to increase profits and retain the revenue from the Maintenance Plan by having Toyota representatives: (i) lie to consumers about the value of the Maintenance Plan and including them on contracts without consumers' knowledge, and/or rushing through paperwork to hide buried terms; (ii) deceive consumers who inquired about the value of the services they were receiving and why certain services were scheduled ahead of time; (iii) include services in the prepaid Maintenance Plan that

were already covered by a vehicle's warranty; and (iii) not provide consumers with all of the prepaid services they purchased under the Maintenance Plan.

## PLAINTIFF'S INDIVIDUAL ALLEGATIONS

22.     On or about October 2, 2020, Plaintiff purchased a certified used 2019 RAV4 from a Toyota dealership in Rancho Santa Margarita, which is a city in Orange County, California.  At the time of purchase, the vehicle had approximately 6,801 miles on it and came with a 12 month/12,000 limited comprehensive warranty.

23.     In addition to Plaintiff's purchase of the vehicle, Toyota also sold Plaintiff a Maintenance Plan that would cover her vehicle for five years and/or up to 55,000 miles.  (A true and correct copy of Plaintiff's transaction summary reflecting Plaintiff's purchase of the 2019 RAV4 and Maintenance Plan is attached hereto as **Exhibit A**).

24.     Plaintiff financed the purchase of her vehicle and Maintenance Plan.  Toyota Credit was listed as the lender for the purchase financing.  (*Id.*)

25.     Plaintiff purchased her Maintenance Plan based on representations of the salesperson at the dealership who outlined the cost-savings and overall value of the Maintenance Plan.  Specifically, the salesperson represented to Plaintiff that her Maintenance Plan would include ten maintenance services – comprised of seven Regular Services and three Major Services.  (A true and correct copy of the ToyotaCare Plus brochure reflecting the Maintenance Plan and the salesperson's notes regarding the Maintenance Plan is attached hereto as **Exhibit B**).

26.     As reflected in the ToyotaCare Plus brochure, the maintenance services would occur every five thousand miles, meaning that Plaintiff would receive:

   a.   Regular Services at 10,000 miles[1]; 20,000 miles; 25,000 miles; 35,000 miles; 40,000 miles; 50,000 miles; and 55,000 miles; and

   b.   Major Services at 15,000 miles; 30,000 miles; and 45,000 miles.

27.     Toyota told Plaintiff that each Regular Service typically costs $100, and Major

---

[1] Plaintiff's first service started at 10,000 miles because the car already had 6,801 miles at the time it was purchased.

Services cost $400.  Thus, Defendants represented that Plaintiff's Maintenance Plan was valued at $1,900.

28.     Plaintiff explained to the salesperson that she was purchasing the plan to save on the maintenance costs that were described by the salesperson when she purchased her Maintenance Plan.

29.     Ultimately, Plaintiff paid $1,025 for the Maintenance Plan, thinking she was saving at least $875 in service costs.

30.     Plaintiff took her car to the Carlsbad Toyota dealership for her scheduled Regular Services and Major Services, trusting that the promised value of the work was being performed. However, Plaintiff began to realize that when she would bring her car in for scheduled maintenance pursuant to her Maintenance Plan, certain work was being performed ahead of schedule or skipped entirely.

31.     For example, on or about January 15, 2022, when Plaintiff brought her car in for her scheduled 20,000-mile Regular Service, Toyota did not perform the 20,000 Regular Service. Instead, Toyota performed a Major Service that should not have been performed until her car reached 30,000 miles.  Further, the invoice the dealership billed to Toyota for this service was only $210 – $190 dollars less than the purported $400 value of a Major Service.

32.     Plaintiff also learned that had she walked in as a cash customer, she would have been billed $380 dollars – again, less than the purported value.

33.     Then, on July 19, 2022, when Plaintiff brought her car in at 29,500 miles for what should have been her 30,000-Major Service, she was instead given the 35,000-mile Regular Service.  This time, only $30 dollars was billed to Toyota ($70 less than the purported value of Regular Services).  Plaintiff also realized that had she paid cash without the Maintenance Plan, she would have only been billed $43 dollars.

34.     Plaintiff started to recognize a consistent pattern whenever she brought her car in for service.  Often, the dealership would skip scheduled services and bill Toyota amounts less than the value Plaintiff was told when she purchased the Maintenance Plan.  She also realized the cash

price for her scheduled services was less than the value Plaintiff was told by Defendants when she purchased the Maintenance Plan.

35.     Plaintiff was confused and questioned the service department at the Toyota dealership as to why maintenance was being performed "ahead of schedule", and also why the amounts charged were lower than what Defendants told her they would be.

36.     Each time Plaintiff questioned Toyota's service department, a Toyota representative would explain that everything was being done as it should, and that Plaintiff was getting exactly what she paid for in the Maintenance Plan.  Plaintiff trusted what Defendants' representatives told her because she assumed Toyota knew what it was doing and was more familiar with the system than she was.

37.     At the end of the Maintenance Plan, Plaintiff realized that if she had paid out-of-pocket each time she brought her car in for service, she would have only paid between $800 and $900 – less than the total price she paid for the Maintenance Plan.

38.     Further, when Plaintiff took her car in at 45,000 miles for a scheduled Major Service, Toyota told her she had only one more service remaining.  Plaintiff was also told she needed to pay extra for cabin and air filters.

39.     Plaintiff was confused, as her Maintenance Plan was supposed to cover her car up to 55,000 miles, not 50,000 miles, and all services were supposed to be included.  Plaintiff realized that she had received far fewer services than she was sold under the Maintenance Plan because Defendants kept performing work ahead of schedule.[2]

## CLASS ACTION ALLEGATIONS

40.     Pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3), or alternatively (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and all other similarly situated consumers in the United States as members of the following proposed Nationwide and California State classes:

---

[2] Plaintiff never received her 20,000-mile Regular Service; 25,000-mile Regular Service; 40,000-mile Regular Service, or 55,000-mile Regular Service.

a.    **Nationwide class:** During the fullest period allowed by law, all persons within the United States who bought a Maintenance Plan within ninety (90) days of purchasing a vehicle from Defendants at any time and at any location (the "Nationwide Class").

b.    **California subclass:** During the fullest period allowed by law, all persons who bought a Maintenance Plan within ninety (90) days of purchasing a vehicle from Defendants at any time and at any location in California (the "California Subclass").

c.    The members of the Nationwide Class and California Subclass are collectively referred to herein as "Class Members."

d.    Excluded from the Class are any Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

41.    Plaintiff and Class Members bring this action pursuant to FRCP Rule 23(a) and (b)(3), on behalf of themselves and all other persons similarly situated for the direct, proximate, and foreseeable injuries caused by Defendants' representations and/or omissions concerning their Maintenance Plan.

42.    The requirements of Federal Rule of Civil Procedure 23 are satisfied for the Nationwide Class and California Subclass.  The proposed Nationwide Class and California Subclass are so numerous that individual joinder of all their members is impracticable because Class Members number in the tens or hundreds of thousands.  The precise number of Class Members and their identities are unknown to Plaintiff at this time but are objectively ascertainable and will be determined through appropriate discovery.

43.    Defendants possess objective evidence as to the identity of each Class Member and, to a reasonable degree of certainty, the damages suffered by each Class Member, including without limitation sales receipts, phone numbers, names, rewards accounts data, credit card data, customer service complaint forms/emails/date, and other evidence which objectively identifies Class Members.

44.    Class Members may be notified of the pendency of this action by mail, publication,

and/or through the records of Defendants and third-party retailers and vendors.

45.     Like Plaintiff, all Class Members purchased the Maintenance Plan with the misunderstanding, caused by their reliance on Defendants' representations and/or omissions, that the Maintenance Plan would save them money on the service of their vehicles.  Such understanding was reasonable and was a material basis for the decision to purchase the Maintenance Plan, which Defendants intended to foster through their various marketing activities in connection with the sale of the Maintenance Plan.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

46.     There are common questions of law and fact affecting Plaintiff and Class Members which predominate over any question affecting only individual members. The answers to these common questions will advance resolution of litigation as to all Class Members.  These common legal and factual issues include but are not limited to:

a.     Whether Defendants market and advertise the Maintenance Plan in a way that is false, deceptive, and/or misleading.

b.     Whether Defendants made the process to cancel or remove the Maintenance Plan cumbersome and overly difficult so as to discourage cancellation of the Maintenance Plan.

c.     Whether Defendants employed a policy of rushing through review of the applicable paperwork so Class Members could not realize how much they were over-paying.

d.     Whether by the misconduct set forth in this complaint, Defendants engaged and continue to engage in unfair, fraudulent, or unlawful business practices;

e.     Whether Defendants' conduct was committed knowingly and/or intentionally;

f.     Whether Defendants' conduct constitutes violations of the federal and/or state laws asserted herein;

g.     Whether Defendants had a duty to correct their fraudulent statements;

h.     Whether Class Members were harmed by Defendants' false statements;

i.     Whether Defendants were unjustly enriched by their conduct;

j.     Whether Defendants' conduct violates public policy;

k.      Whether Class Members are entitled to punitive damages;

l.      Whether the Class Members are entitled to recover statutory attorney's fees; and

m.      Whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

47.     Plaintiff's claims are typical of the claims of the proposed Nationwide Class and California Subclass because Plaintiff and Class Members were harmed in the same manner by the same conduct, all of which was intended by Defendants.

48.     Plaintiff and Class Members have all sustained economic injury arising out of Defendants' violations of common and statutory law alleged herein.

49.     Plaintiff will fairly and adequately represent and protect the interests of the Nationwide Class and California Subclass.  Plaintiff intends to prosecute this claim vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class Members, nor is Plaintiff subject to any unique defenses.

50.     Plaintiff's interests do not conflict with the interests of the Nationwide Class or the California Subclass she seeks to represent. Plaintiff has retained counsel competent and experienced in prosecuting class actions, and Plaintiff intends to prosecute this action vigorously.

51.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members.

52.     Given the small relative amount of damages at stake for any of the individual Class Members, individual litigation is not practicable.

53.     Individual Class Members will not wish to undertake the burden and expense of individual cases.

54.     In addition, individualized litigation increases the delay and expense to all parties and multiplied the burden on the judicial system.  Individualized ligation also presents the potential for inconsistent or contradictory judgments.

55.     In contrast, the class action device presents far fewer management difficulties and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

56.     Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members.  Injuries sustained by Plaintiff and Class Members flow, in each instance, from a common nucleus of operative facts as set forth above.

57.     In each case, Defendants used deceptive marketing and sales techniques aimed at the Class Members, causing harm to all Class Members as a result of such intentional conduct. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

58.     Proposed class counsel possesses the knowledge, experience, reputation, ability, skill, and resources to represent the Class and should be appointed lead counsel for the Class.

59.     In addition to, or in the alternative to the above, this case is properly maintained as a class action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class Members as a whole, such that final equitable relief is appropriate regarding the Class as a whole.

60.     Defendants have acted and/or refused to act on grounds applicable generally to the Class Members as a whole.  Defendants made representations and/or omissions regarding their Maintenance Plan to Plaintiff and Class Members, which they knew or should have known were false, deceptive and/or misleading.

61.     Plaintiff and Class Members have been injured and continue to be injured by Defendants' acts and/or omissions.  Therefore, Plaintiff and Class Members seek an injunctive relief or corresponding declaratory relief with respect to the class as a whole.

62.     In the alternative, this case is properly maintained as a class action with respect to the following issues under FRCP 23 (C)(4):

        a.   The liability of Defendants under Plaintiff's and Class Members' claims for relief resulting from Defendants' representations and/or omissions, designed by Defendants and employed to all relevant consumers on a company-wide basis,

and made to Plaintiff and Class Members concerning the Maintenance Plan;

b.   Whether Defendants owed a duty of care to Plaintiff and the Class Members;

c.   Whether Defendants knew or should have known that representations and/or omissions made concerning their Maintenance Plan were false, deceptive and/or misleading;

d.   Whether Defendants wrongfully represented, and continue to represent, that the Maintenance Plan would save Toyota customers money on the service of their vehicles;

e.   Whether Defendants' representations and/or omissions are true, or are misleading, or objectively reasonably likely to deceive;

f.   Whether Defendants' representations and/or omissions with respect to their Maintenance Plan were false, deceptive, and misleading;

g.   Whether Defendants' representations and/or omissions caused Plaintiff and Class Members to suffer harm; and

h.   Whether Defendants knew or should have known that its representations and/or omissions would cause Plaintiff and Class Members to suffer harm.

## **COUNT I**

### **(Unjust Enrichment)**

63.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above.

64.    At all relevant times, Defendants deceptively marketed, advertised, and sold the Maintenance Plan to Plaintiff and Class Members.

65.    The Maintenance Plan purchased by Plaintiff and Class Members did not provide the promised performance.

66.    Plaintiff and Class Members conferred a benefit on Defendants in the form of monies that were paid in exchange for Defendants' Maintenance Plan.

67.    Defendants were aware and had knowledge of these non-gratuitous benefits, and,

in fact, intended for this to occur as a result of their fraudulent, deceitful marketing and sales practices.

68.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Maintenance Plan, which retention under these circumstances is unjust and inequitable because Defendants misrepresented and/or omitted material facts concerning the Maintenance Plan.

69.     Defendants' misrepresentations and/or omissions caused injuries to Plaintiff and Class Members because no reasonable consumer would have purchased the Maintenance Plan if Defendants were honest about the value and the true facts regarding the Maintenance Plan were known.

70.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## COUNT II

### (Fraud)

71.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above, which detail fraud with specificity.

72.     Defendants made affirmative false and misleading statements.

73.     Alternatively, Defendants fraudulently omitted and concealed material facts.

74.     Defendants had knowledge of the falsity of the facts in their misleading statements and/or omissions and/or concealments.

75.     Plaintiff and Class Members had no means available to determine the falsity of the statements or to discover the omissions and concealment. And Defendants' employees were trained and encouraged to act in a fraudulent manner, such that when any Plaintiff sought an explanation of the value of the Maintenance Plan, Defendants made further misleading statements and omissions to further their fraudulent acts.

76.     Defendants intended for Plaintiff and Class Members to rely upon their statements,

13

omissions, and concealment.

77.     Plaintiff and Class Members materially relied upon the statements, omissions, and concealment by purchasing the Maintenance Plan, which no reasonable consumer would have purchased if Defendants were honest about the value and the true facts regarding the Maintenance Plan were known.

78.     The reliance of Plaintiff and Class Members was justifiable and reasonable.

79.     Plaintiff and Class Members lacked knowledge that the statements were false.

80.     As a direct and proximate result of Defendants' misleading statements and/or omissions, Plaintiff and Class Members were damaged.

81.     Defendant's actions intentionally harmed Plaintiff and the other Class Members without just cause, and as such were evil, wanton, reckless, and intentional, and made with deliberate and flagrant disregard for consumers, so as to justify the imposition of punitive damages to punish Defendant and to deter Defendant and others from engaging in similar conduct in the future.

## COUNT III

### (Negligent Misrepresentation)

82.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above, which detail Defendants' negligent misrepresentations with specificity.

83.     Through their advertising and course of their regular business, Defendants made representations and/or omissions to Plaintiff and Class Members of material facts concerning the Maintenance Plan.

84.     Defendants owed Plaintiff and Class Members a duty to provide the Maintenance Plan according to Defendants' representations.

85.     Defendants breached their duty owed to Plaintiff and Class Members by failing to provide the Maintenance Plan according to their representations.

86.     Defendants failed to act with reasonable care in making the above-mentioned representations and/or omissions concerning their Maintenance Plan.  Defendants made the above-

14

mentioned representations and/or omissions concerning their Maintenance Plan without reasonable grounds for believing them to be true.

87.     Defendants made the above-mentioned representations and/or omissions with the intent to induce Plaintiff and Class Members into purchasing the Maintenance Plan.

88.     Defendants knew or should have known that Plaintiff and the Class Members were ignorant as to the true value of the Maintenance Plan, Regular Service, and Major Service and that Plaintiff and Class Members would reasonably rely upon Defendants' representations and/or omissions.

89.     Plaintiff and Class Members did justifiably and reasonably rely on Defendants' representations and omissions. Plaintiff and Class Members would not have purchased the Maintenance Plan without such statements and/or omissions made by Defendants.

90.     As a result of Defendants acts and/omissions, Plaintiff and Class Members were damaged and harmed by Defendants in that they have been deprived of their benefit of the bargain and loss monies they overspent on the Maintenance Plan.

## COUNT IV

### (Violation of Magnuson-Moss Act)

91.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above.

92.     The Magnuson-Moss Consumer Products Liability Act, 15 U.S.C section 2301, *et. seq.*, provides a private right of action to purchasers of consumer products against retailers who, inter alia, fail to comply with the terms of a written warranty, express warranty, and/or implied warranty.

93.     Plaintiff and Class Members are "consumers" as defined in 15 U.S.C. section 2301(3).

94.     Defendants are "supplier[s]" and "warrantor[s]" as defined in 15 U.S.C. section 2301(4).

95.     Plaintiff and Class Members' vehicles are "consumer product[s]" as defined in 15

U.S.C. section 2301(1).

96.     Defendants provided Plaintiff and Class Members with a "written warranty" within the meaning of 15 U.S.C. section 2301(6).

97.     This warranty provided with purchase of Plaintiff's and Class Members' vehicles promised a certain number of maintenance services, comprised of Regular Services and Major Services.

98.     Defendants failed to honor this warranty by performing less than the required maintenance services along with failing to honor the timeline of performance of such services.

99.     Defendants have been given a reasonable opportunity by Plaintiff and Class Members to cure their conduct by complying with the warranty yet have repeatedly failed to do so.

100.    Plaintiff and Class Members have suffered damages as a direct and proximate result of Defendants' systematic and intentional breaches of warranty.

101.    As demonstrated above, Defendants failed to comply with the express warranty with regard to Plaintiff's and Class Members' vehicles, that they manufactured, advertised, distributed, marketed, and/or sold.

102.    By virtue of the foregoing, Plaintiff and Class Members are entitled to an award of damages and other appropriate relief, including attorney's fees.

## COUNT V

### (Violation of the Lanham Act)

103.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above.

104.    Defendants marketing materials and statements concerning the Maintenance Plan are commercial advertisements that Defendants intended to disseminate across the United States.

105.    By engaging in the above-described conduct, Defendants made false statements in commercial advertisements directed at the public, and have thus engaged in unlawful false or misleading advertising under 15 U.S.C. §1125, *et seq.*

16

106.    Defendants' false statements in their commercial advertisements deceived or had the tendency to deceive a substantial segment of their audience and the Class Members.

107.    Defendants' deception through their commercial advertisements was material and a substantial reason that Plaintiff and the Class Members purchased the Maintenance Plan.

108.    Plaintiff and the Class Members were harmed as a result of Defendants' false statements, and are thus entitled to restitutionary and injunctive relief, including without limitation disgorgement of any unlawful gains that Defendants obtained as a result of their unlawful and unfair conduct at the expense of Plaintiff and the Class Members.

## COUNT VI

**(Violation of California Business & Professions Code section 17200)**

109.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above.

110.    By engaging in the above-described conduct, Defendants acted in a manner that is unlawful and unfair, and have thus engaged in unfair and unlawful business practices to the extreme detriment of Plaintiff and the California Subclass, which conduct is prohibited under California Business & Professions Code sections 17200, *et seq*.

111.    Defendants' unlawful and unfair conduct has allowed for Defendants to enrich themselves at the expense of Plaintiff and the California Subclass, including through Plaintiff's and California Subclass' payment of monies to Defendants, including without limitation through the purchase of the Maintenance Plan.

112.    Plaintiff and California Subclass are thus entitled to restitutionary and injunctive relief, including without limitation disgorgement of any unlawful gains that Defendants obtained as a result of their unlawful and unfair conduct at the expense of Plaintiff and the California Subclass.

## COUNT VII

**(Violation of California Business & Professions Code section 17500)**

113.    Plaintiff and Class Members reallege and incorporate by reference each allegation

set forth above.

114.   Defendants marketing materials and statements concerning the Maintenance Plan are commercial advertisements that Defendants intended to disseminate across the United States and California.

115.   By engaging in the above-described conduct, Defendants made false statements in commercial advertisements directed at the public, and have thus engaged in unlawful false or misleading advertising under California Business & Professions Code sections 17500, *et seq*.

116.   Defendants' false statements in their commercial advertisements deceived or had the tendency to deceive a substantial segment of their audience and the California Subclass.

117.   Defendants' deception through their commercial advertisements was material and a substantial reason that Plaintiff and the California Subclass purchased the Maintenance Plan.

118.   Plaintiff and the California Subclass were harmed as a result of Defendants' false statement, and are thus entitled to restitutionary and injunctive relief, including without limitation disgorgement of any unlawful gains that Defendants obtained as a result of their unlawful and unfair conduct at the expense of Plaintiff and the California Subclass.

## **COUNT VIII**

### **(Breach of Contract)**

119.   Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above.

120.   Plaintiff and the Class Members entered into agreements with Defendants for the purchase of the Maintenance Plain.  Thereunder, Plaintiffs and Class Members paid Defendants for a service package that included scheduled maintenance services on their Toyota vehicles.

121.   Under the Maintenace Plan, these maintenance services were supposed to reoccur at set mileages.

122.   For example, Plaintiff contracted to receive:

a.   Regular Services at 10,000 miles; 20,000 miles; 25,000 miles; 35,000 miles; 40,000 miles; 50,000 miles; and 55,000 miles; and

      b.   Major Services at 15,000 miles; 30,000 miles; and 45,000 miles

123.    On or about January 15, 2022, when Plaintiff brought her car in for her scheduled 20,000-mile Regular Service, Toyota did not perform the 20,000 Regular Service. Instead, Toyota performed the Major Service that should not have been performed until her car reached 30,000 miles.

124.    Then, on July 19, 2022, when Plaintiff brought her car in at 29,500 miles for her 30,000-Major Service, she was instead given the 35,000-mile Regular Service.  This time, only $30 dollars was billed to Toyota ($70 less than the purported value of Regular Services).  She also realized that had she paid cash without the Maintenance Plan, she would have only been billed $43 dollars.

125.    When Plaintiff took her car in at 45,000 miles for a scheduled Major Service, Toyota told her that she had only one more service remaining.  She was also told that she needed to pay extra for cabin and air filters.

126.    Plaintiff was confused, as her Maintenance Plan was supposed to cover her car up to 55,000 miles, not 50,000 miles, and all services were supposed to be included.  Plaintiff also realized that she received far fewer services than she was sold under the Maintenance Plan because Defendants kept performing work ahead of schedule.

127.    Defendants breached their agreement with Plaintiff by failing to provide her the 20,000-mile Regular Service; 25,000-mile Regular Service; 40,000-mile Regular Service, or 55,000-mile Regular Service.

128.    Plaintiff is informed and believes, and thereon alleges, that Defendants engaged in similar breaches of the agreements Defendants had with Class Members by failing to provide Class Members with all of the scheduled services they paid for when they purchased the Maintenance Plan.

129.    Plaintiff and the Class Members fully, completely, and competently performed and fulfilled their obligations under their agreement with Defendants for the Maintenance plain, except for those that have been excused or otherwise discharged by Defendants or Defendants' conduct.

130.    Conversely, Defendants breached their agreement with Plaintiff and the Class Members by systematically failing and refusing to provide all services that were included in the Maintenance Plan.

131.    As a result of Defendants' breaches of their obligations to Plaintiff and the Class Members under the Maintenance Plan, Plaintiff and the Class Members have been damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the putative Class Members, pray for a judgment:

a.    Determining that this action is a proper class action and certifying the Class, as defined herein;

b.    Appointing Plaintiff as Class Representative;

c.    Appointing the undersigned as Class Counsel;

d.    Finding Defendants liable to Plaintiff and Class Members for actual damages in such amount(s) as the Court or Jury may determine;

e.    Awarding statutory damages as appropriate;

f.    Awarding disgorgement of gross profits and all other forms of equitable monetary relief;

g.    Awarding punitive damages based on Defendants' malicious, oppressive, fraudulent, wanton and reckless behavior;

h.    Awarding pre- and post-judgment interest;

i.    Awarding injunctive relief, as claimed herein or as the Court may deem proper;

j.    Awarding Plaintiff and Class Members attorney fees and all litigation costs;

k.    Awarding Plaintiff and Class Members such other relief as may be just and proper;

l.    Awarding compensatory damages against Defendant in favor of Plaintiff and the Class for damages sustained as a result of Defendant's wrongdoing; and

m.    Awarding such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

**SINGLETON SCHREIBER, LLP**

/s/ *Christopher R. Rodriguez*

By:    Christopher R. Rodriguez
crodriguez@singletonschreiber.com
Andrew D. Bluth
abluth@singletonschreiber.com
John R. Ternieden
jternieden@singletonschreiber.com
Trent Nelson
tnelson@singletonschreiber.com
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478

# EXHIBIT A

**Santa Margarita Toyota**
22722 Avenida Empresa
Santa Margarita, CA 92688

**Transaction Summary**

**Deal Number:**   31430

| | | | |
|---|---|---|---|
| **Buyer Name:** | TERESA SOLIS | **Accessories:** | $0.00 |
| **Co-Buyer Name:** | N/A | **Deposit:** | $0.00 |
| **Vehicle Description:** | 2019 TOYOTA RAV4 | | |
| **Autocode:** | 01121 | **Trade-in Amount:** | $0.00 |
| **Deal Started:** | 10/02/20 5:18:22pm | **Trade-in Payoff:** | $0.00 |
| **Deal Finished:** | 10/02/20 5:41:08pm | **Rebate/Non-cash Credit:** | $0.00 |
| **Indirect Lender:** | TOYOTA MTR CRDT CORP | **Cash Down:** | $3,000.00 |
| **Cash Price:** | $32,309.00 | | |
| **Base Payment:** | $517.39 | **Term (in months):** | 72 |
| **APR:** | 4.65% | **Base Amount Financed:** | $32,394.54 |

**Products Selected for Purchase:**

| | Monthly | Amount |
|---|---|---|
| TFS Guaranteed Auto Protection<br>Reinsurance 325 (1 - 72 months) | $15.57 | $975.00 |
| TFS Prepaid Maintenance<br>ToyotaCare Plus Synthetic Oil 10K (60 months / 55,000 miles / $0 deductible / SYJ / 1) | $16.37 | $1,025.00 |

**Products NOT Selected for Purchase:**

| | Monthly | Amount |
|---|---|---|
| TFS Vehicle Service Agreement<br>TFS Platinum New $0 (84 months / 75,000 miles / $0 deductible / B77 / T2) | $35.58 | $2,228.00 |
| TFS Tire & Wheel Protection<br>Platinum Plus Cosmetic w/Key (72 months / $0 deductible / 1) | $14.53 | $910.00 |
| PermaPlate<br>INTERIOR/EXTERIOR protect/repair/replace (84 / 999,999 / $0.00) | $9.70 | $564.00 |

**Monthly Payment:**   $549.33

\* Differences in calculation methods may cause payments to vary slightly from those calculated by other systems.

This worksheet is not a binding agreement or advertisement and is provided for informational purposes only.
Please refer to your executed installment contract for the controlling terms of your transaction.

| | | |
|---|---|---|
| Buyer Signature | *Teresa L. Solis* | 10/2/2020 |
| Co-Buyer Signature | | 10/2/2020 |
| Finance Mgr. Signature | | 10/2/2020 |

# EXHIBIT B

# Toyota**Care** **Plus**

## Why should your peace of mind end at two years?

ToyotaCare Plus helps provide the same convenience and peace of mind that come with every new Toyota[3]— continued coverage of your vehicle's factory-recommended maintenance and 24-hour roadside assistance.[4]



### ToyotaCare Plus Plans Available[6]

3 years/35,000 miles
3 years/45,000 miles

4 years/45,000 miles
4 years/60,000 miles

5 years/55,000 miles
5 years/75,000 miles

Backed by the strength of Toyota

### Major Services
Coverage of major 30,000; 45,000; 50,000; and 75,000 mile services[5]

### 24-Hour Roadside Assistance
Enjoy 24/7 roadside assistance coverage through the life of your plan

### Valuable Coupons
Coupons and offers for significant savings on selected maintenance services from your participating Toyota dealer

### Service History and Reminders
Help you track your service visits and stay on top of your vehicle's maintenance

[3] Only vehicles with no more than 31,000 miles and are less than 37 months from date of first use are eligible for ToyotaCare Plus.

[4] Roadside assistance is provided by and/or through Cross Country Motor Club, Inc., except in Alaska, California, Hawaii, Oregon, Wisconsin and Wyoming, where services are provided by and/or through Cross Country Motor Club of California, Inc. Towing will be provided to the nearest Toyota dealership, or to an alternate Toyota dealership of the customer's choice if located within 25 miles from the disablement location.

[5] Coverage of major services varies by vehicle.

[6] Coverage is effective from the vehicle's date of first use as a new vehicle and expires at selected plan's year or mileage limit, whichever occurs first.